# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARK G. CHIONIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 4120 |
| | ) |
| GROUP LONG TERM DISABILITY | ) Wayne R. Andersen |
| PLAN FOR EDWARD HEALTH | ) District Judge |
| SERVICES CORPORATION, GROUP | ) |
| SHORT TERM DISABILITY PLAN | ) |
| FOR EDWARD HEALTH SERVICES | ) |
| CORPORATION, EDWARD HEALTH | ) |
| SERVICES CORPORATION, an | ) |
| Illinois corporation, and | ) |
| UNUMPROVIDENT CORPORATION, | ) |
| and Illinois corporation | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This matter is before the court on the parties' cross-motions for summary judgment. This lawsuit arises from a claim for short-term and long-term disability benefits pursuant to section 502(a)(1)(B) of Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). For the following reasons, plaintiff Mark G. Chionis' motion for summary judgment [18] is denied. Defendants Group Short Term Disability Plan and Group Long Term Disability Plan for Edward Health Services Corporation and UnumProvident Corporation's cross-motion for summary judgment [24] is granted in part. Defendants are granted summary judgment on Count I, and an administrative remand is ordered on Count II for a full and fair review of Chionis' claim for short-term disability benefits.

## BACKGROUND

Plaintiff Mark G. Chionis was employed by Edward Health Services Corporation ("Edward Health") as an emergency room physician and hospital administrator for Edward Hospital from August 1, 1996 through January 10, 2001. As a benefit of his employment, Chionis enrolled in defendants Group Short Term Disability Plan (the "STD Plan") and the Group Long Term Disability Plan (the "LTD Plan") for Edward Health (collectively "the Plans"). The Plans were issued to Chionis through Edward Health. Edward Health is the Plan Administrator and the Plan Sponsor. Under the Plans, Edward Health has discretionary authority, as the STD Plan's claims fiduciary, to determine an employee's eligibility for short-term disability benefits. In addition, under the LTD Plan, defendant UnumProvident Corporation ("Provident") has discretionary authority, as the LTD Plan's claims fiduciary, to determine eligibility for long-term disability benefits.

Chionis claims that he is disabled due to complications from elective bilateral Lasik eye surgery and that he suffers from chronic eye pain. The Lasik procedure was performed by Thomas Michelson, M.D. on April 14, 2000 to correct near-sightedness and mild astigmatism. After the procedure, Chionis complained of eye pain, dryness and irritation. On May 9, 2000, Chionis stopped working due to eye discomfort and sought medical treatment. Dr. Michelson, however, found nothing unusually wrong with Chionis' eyes and did not find anything in his examination of Chionis that qualified for an ophthalmologic disability.

Thereafter, Chionis obtained a second opinion from ophthalmologist Robert Mack, M.D. on May 15, 2000. Upon his initial examination, Dr. Mack detected a minimal amount of blepharitis (inflammation of the eyelid) and distichiasis (very fine inverted lashes), which Dr.

2

Mack removed. Dr. Mack concluded that the distichiasis, in combination with normal side-effects of Lasik surgery, caused Chionis' eye discomfort and believed that Chionis' symptoms would resolve on their own over time. Even after the inflammation had healed, Chionis continued to complain of eye pain and discomfort. Dr. Mack, however, found no clinical evidence to substantiate Chionis' symptoms. Dr. Mack stated:

> While he had some objective findings in his early examinations, he no longer has trichiasis or rapid tear film breakup nor any PEK nor objective conjunctival injection of any kind. It is impossible to tell which eye bothers him when looking at him at arm's length or even at the slit lamp objectively.
>
> I feel that his symptoms are greatly out of proportion to physical findings. While he may have some element of dysethesia, ordinarily pain that would produce total medical disability would have some physical finding to go along with it. Certainly any severe neurotrophic process would be expected to show some physical finding and not a stone cold normal cornea such as he shows.

(Admin. Record at PLACL 00227).

Based on his examination of claims, Dr. Mack concluded that Chionis' symptoms may be psychosomatic and should be addressed through psychological counseling. Dr. Mack then referred Chionis to psychologist Martin Lemon, PhD. Dr. Lemon provided counseling and also referred Chionis to psychiatrist Ralph Orland, M.D., who prescribed Klonopin for anxiety and Zoloft and Prozac for depression.

Chionis obtained a third opinion from ophthalmologist Jonathan Rubenstein, M.D. Dr. Rubenstein examined Chionis on July 10, 2000. During that examination, Dr. Rubenstein noted that Chionis' Lasik flaps and cornea looked healthy and that his eyes did not show any symptoms of dryness. Dr. Rubenstein did not find any clinical evidence to substantiate Chionis' complaints.

3

Dr. Michelson conferred with Drs. Mack and Rubenstein, and they concurred that Chionis is not disabled. Dr. Michelson, with Chionis' permission, also spoke with Edward Health's director of emergency medicine, Dr. Kaplan, in an attempt to facilitate Chionis' return to work. Dr. Kaplan agreed to reduce Chionis' hours by 20 percent in order to accommodate his eye symptoms. On October 30, 2000, Chionis resumed his emergency room and administrative responsibilities at Edward Hospital. On January 10, 2001, however, Chionis resigned.

After his resignation, Chionis consulted a fourth ophthalmologist, Stephen Pflugfelder, M.D. Dr. Pflugfelder examined Chionis on January 22 and 24, 2001. Based on these two examinations, Dr. Pflugfelder opined that Chionis' symptoms likely were a combination of over-sensitization of the sensory nerves in his cornea following the Lasik procedure and tear film deficiency. Chionis has not been examined by Dr. Pflugfelder since the January 2001 consultations.

On or about July 6, 2001, Chionis submitted a claim for long-term disability benefits under the LTD Plan and short-term disability benefits under the STD Plan. Chionis claimed that he is disabled due to intense burning in both eyes which was onset by Lasik eye surgery. Provident initially denied Chionis' long-term disability claim on August 31, 2001 on the basis that the LTD Plan did not provide coverage for complications from elective cosmetic eye surgery because he did not meet the definition of "disabled" as defined in the Plan. Provident did not address Chionis' claim for short-term disability benefits at this time.

On November 28, 2001, Chionis appealed the denial of benefits under the LTD Plan and provided additional information in support of his claim for disability benefits under both the LTD Plan and STD Plan. Provident reversed its initial determination that Chionis's condition did not

4

fall under the policy definition of sickness or injury and acknowledged that Chionis' claimed disability did fall within the LTD Plan.

In light of its determination that Chionis' claim did, in fact, fall within the scope of the LTD Plan, Provident reviewed Chionis' claim for long-term benefits. Provident evaluated his medical records and consulted with an in-house physician, Nancy Beecher M.D., who opined that Chionis' medical records did not support a finding that Chionis suffered from a disabling ophthalmologic condition. Dr. Beecher recommended, however, that Provident consider a possible psychiatric basis for disability.

Pursuant to Dr. Beecher's recommendation, Provident obtained and reviewed medical records from psychologist Martin Lemon, PhD. and psychiatrist Ralph Orland, M.D. Dr. Orland prescribed Klonopin for anxiety and Zoloft and Prozac for depression. According to Dr. Lemon's records, Chionis believed that all of his medical problems were the result of the Lasik procedure. As a result, Chionis discontinued psychotherapy with Dr. Lemon on January 6, 2001 and discontinued psychiatric treatment with Dr. Orland on January 12, 2001.

Provident also consulted two clinical psychologists, Jimmy Catlett and Les Kertay, Ph.D., who opined that Chionis was unable to perform his occupational duties due to symptoms of anxiety and depression from May 23, 2000 (the date he began psychiatric treatment) to January 12, 2001 (the date he discontinued psychiatric treatment). Drs. Kertay and Catlett, however, noted that there were no medical records reflecting any psychiatric symptoms or treatment after January 12, 2001.

On April 8, 2002, Provident notified Chionis of its determination that he was disabled due to a psychiatric condition during the period from May 23, 2000 to January 12, 2001.

Nevertheless, Provident denied his claim for long-term benefits for a psychiatric disability because under the terms of the LTD Plan, a claimant must satisfy a 180-day elimination period during which time the claimant is disabled but benefits are not payable. Because Chionis had returned to work during the elimination period for more than 30 days from November 1, 2000 through January 10, 2001, pursuant to the terms of the LTD Plan, he was required to satisfy a new elimination period which commenced on January 11, 2001 (the day after he had resigned). Provident also explained that because there was no record of any psychiatric symptoms or treatment after January 12, 2001, his claim for long-term disability benefits due to a psychiatric disability was denied. Provident's decision was upheld on appeal on April 22, 2002.

On June 6, 2003, counsel for Chionis contacted Provident and requested that Provident review its denial of long-term disability benefits. Provident agreed to conduct a second courtesy review of the denial of his claim. At this time, Chionis challenged Provident's decision denying his ophthalmologic disability claim but did not appeal its determination denying his psychiatric disability claim. Chionis claimed a disability supported by ophthalmologic and neurologic opinions. In support of his claim, Chionis re-submitted Dr. Pflugfelder's consultation report and other materials and also submitted additional records from Mary Jo Curran, M.D., an anesthesiologist specializing in pain management, and Alf Rezai, M.D., a neurosurgeon.

As part of this second review, Provident consulted an independent ophthalmologist and eye surgeon, Frank Read, M.D., who reviewed all of Chionis' medical records, including the records and opinions of Drs. Michelson, Mack, Rubenstein, Pflugfelder, Curran and Rezai as well as Chionis' psychiatric treatment records of Drs. Lemon and Orland. Dr. Read noted that Chionis demonstrated no increased blinking, guarding of vision or other indicia of eye pain

6

during any clinical examination. Rather, Dr. Read observed that Chionis' treating ophthalmologists found no evidence of any disabling eye condition. Dr. Read also determined that Dr. Pflugfelder's diagnosis of over sensitization of the sensory nerves of the cornea post Lasik is not a recognized medical diagnosis and that the diagnosis did not correlate to any clinical findings.

Dr. Read acknowledged that Chionis has some dry eye symptoms but that such symptoms, in an average person, do not produce any restrictions or limitations on any kind of work. Ultimately, Dr. Read concluded that Dr. Pflugfelder's diagnosis is not supported by the clinical data and that Chionis' symptoms likely were related to a psychiatric condition. Dr. Read determined that there was clinical data to support a finding of loss of functional ability and he was not able to establish any restrictions or limitations on Chionis' ability to work as an emergency room physician.

On August 22, 2003, Provident notified Chionis of its decision to uphold the LTD Plan's benefit determination on appeal, thereby exhausting Chionis' administrative remedies for his claim for long-term disability benefits under the LTD Plan. At this point, Edward Health still had not addressed Chionis' claim for short-term disability benefits.

On April 29, 2004, Chionis through his attorneys submitted additional records and requested Provident to reconsider its August 22, 2003 benefit determination. On May 12, 2004, Provident notified Chionis that the administrative review of his claim for long-term disability benefits under the LTD Plan was completed on August 22, 2003 and that no further review would be conducted.

## DISCUSSION

### I. Judicial Standard of Review under ERISA

Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, a court reviews the denial of benefits de novo unless the employee welfare benefit plan gives the administrator discretionary authority to determine eligibility. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U. S. 101, 115 (1989); *Militello v. Central States, Southeast & Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004). In determining whether a plan administrator has discretionary authority, the court looks to the plan's plain language. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).

Paragraph 6 of the LTD Plan sets forth the claims procedure and provides, in part:

> Claims for benefits under the Plan are to be submitted to Provident as provided herein. Payment of claims under the Plan will be made by Provident. . . .
>
> It is the intent of the Plan sponsor that the Claims Fiduciary [Provident] shall have the sole and exclusive discretion and authority to carry out all actions involving claims procedures explained in the Policy. The Claims Fiduciary shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits.

(Admin. Record at PLACL 00243). This language clearly vests Provident with the "sole discretion" to resolve all issues arising under the LTD Plan, including determinations for benefits eligibility. Thus, Provident's decision should be reviewed under the arbitrary and capricious standard. *See Firestone*, 489 U. S. at 115.

8

## II. Provident's Decision To Deny Chionis' Long-Term Disability Claim Was Reasonable

The arbitrary and capricious standard is extremely deferential and is the least demanding form of judicial review. *See Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 607 (7th Cir. 1999). A district court should not second-guess the administrator's decision if it "was made rationally and in good faith," and the plan administrator's decision may be reversed only if it was "completely unreasonable." *Kobs v. United Wisconsin Insurance Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005).

A district court's review is limited to the information submitted to the plan's administrator. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Plan*, 195 F.3d 975, 980-82 (7th Cir. 2000). Because Chionis exhausted his administrative remedies under the LTD Plan on August 22, 2003, the documents submitted by Chionis after August 22, 2003 are not part of the administrative record and will not be considered by this court.

The record clearly shows that three of Chionis' treating ophthalmologists unequivocally determined that he is not disabled by any ophthalmologic condition. Indeed, Chionis' primary treating ophthalmologist who performed the Lasik procedure, Dr. Michelson, opined that Chionis' symptoms fail to qualify as a serious health condition and that he is not disabled. Dr. Mack, another ophthalmologist who treated Chionis, also concluded that Chionis is not disabled by any eye condition. Dr. Mack stated that there were no clinical findings to substantiate Chionis' symptoms. A third treating ophthalmologist, Dr. Rubenstein, also concluded that Chionis is not disabled.

The record shows that Drs. Michelson, Mack and Rubenstein based their opinion of non-disability on objective medical tests, numerous clinical examinations of Chionis, their

9

personal knowledge of Chionis' treatment and their expertise as board certified ophthalmologists. This court has no doubt that Provident acted reasonably in relying on the medical opinions of Chionis' treating specialists.

Chionis accuses Provident of failing to submit his medical records to an independent ophthalmologist for review. However, the record shows that Provident, in fact, did submit Chionis' medical records to Dr. Read for an independent ophthalmologist's review, and Dr. Read found no clinical evidence supporting a finding of disability.

It is well established that a plan fiduciary may rely on the opinion of a well qualified consulting physician in declining a disability claim under ERISA. *See Bismark-Thurbush v. Metropolitan Life Ins. Co.*, 2004 WL 1093611, at *4 (N.D. Ill. May 6, 2004) (finding that "a plan fiduciary's placing stock in the opinion of a well informed independent expert is often strong evidence of a thorough investigation that completely shields a benefits determination from judicial reversal"). Indeed, the Seventh Circuit has recognized that an administrator's decision to seek independent expert advice is evidence of a thorough investigation. *See Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998). Provident's reliance on Dr. Read's independent medical opinion supports a finding that Provident's denial of benefits was reasonable.

Chionis also argues that Provident ignored the opinion of Dr. Pflugfelder and failed to explain why it rejected his opinion. As discussed above, Provident submitted Chionis' claim to Dr. Read for an independent medical review. In rendering his opinion, the record shows that Dr. Read examined all of Chionis' medical records, including the opinions of Drs. Pflugfelder, Curran and Rezai as well as the opinions proffered by Drs. Michelson, Mack, and Rubenstein.

Based on his review of all of the medical records, Dr. Read rejected Dr. Pflugfelder's diagnosis and concluded that there was no clinical evidence to support a finding of disability.

As a threshold matter, an ERISA administrator is not required to explain why it credits reliable evidence that conflicts with a treating physician's opinion. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Nonetheless, Dr. Read's medical review report provides a rational critical analysis disputing Dr. Pflugfelder's conclusions. Dr. Read specifically opined that Dr. Pflugfelder's diagnosis of over sensitization of the sensory nerves of the cornea post-Lasik is not a recognized medical diagnosis in any of the medical literature. The record shows that Dr. Read consulted four corneal surgeons who never had heard of Dr. Pflugfelder's purported diagnosis. In addition, Dr. Read determined that Dr. Pflugfelder failed to present any clinical findings to support his diagnosis.

Finally, Chionis claims that Provident ignored neurological opinions submitted by Drs. Curran and Rezai, who treated Chionis' eye pain. As stated before, a plan administrator is not required to explain why it credits reliable evidence that conflicts with a treating physician's opinion. *See Black & Decker Disability Plan*, 538 U.S. at 834. Reaching a decision amid conflicting medical evidence is a question of judgment that should be left to Provident under the arbitrary and capricious standard. *See Sisito v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005) ("Question of judgment are left to the plan administrator and it is not [the court's] function to decide whether [it] would reach the same conclusion as the administrator.") (internal quotations and citations omitted). As the Seventh Circuit recently stated, "the objective is not to determine if [the plan administrator]'s decision is correct, but only if it is reasonable." *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 578 (7th Cir. 2006).

The record show that Provident's decision to deny Chionis' claim for long-term disability benefits was reasonable because it is was based upon the medical opinions of three of Chionis' treating ophthalmologists and an independent medical review.

## III. Provident Reasonably Determined that There Was No Support for Psychiatric Restrictions and Limitations After January 12, 2001

Chionis does not claim that he has a psychiatric disability. Indeed, the sole basis for Chionis' disability claim in his complaint is based on the pain he suffers from his eye condition. The record shows that Provident voluntarily evaluated a possible psychiatric basis for disability. However, in his administrative appeal, Chionis did not challenge Provident's denial of benefits based on a psychiatric disability.

Chionis now takes issue with Provident's determination that there is no support for psychiatric restrictions and limitations after January 12, 2001. Chionis argues that, even though he discontinued treatment with Drs. Orland and Lemon in January 2001, he obtained psychological counseling with Judith Flaxman, PhD. Chionis, however, did not start seeing Dr. Flaxman until June 2001, which is five months after his coverage under the LTD Plan terminated on January 10, 2001. It was not unreasonable for Provident to determine that there was nothing in his medical records to support a finding of a psychiatric disability after January 12, 2001. Chionis also disputes Provident's determination that he is subject to a new elimination period based on his return to work for over 30 days from October 30, 2000 to January 10, 2001.

Chionis, however, did not raise these issues in his administrative appeal which precludes him from raising these arguments in this litigation. Based on the administrative record, this court finds that Provident reasonably and permissibly determined that Chionis was required to satisfy a

12

new 180-day elimination period based on his return to active work from October 30, 2000 to January 10, 2001.

## IV. Chionis' Claim For Short-Term Disability Benefits Should Be Remanded

It is undisputed that Edward Health has failed to provide Chionis with notice of its benefit determination for his short-term disability benefit claim. The Seventh Circuit has stated that the proper remedy for the failure to provide a full and fair review is to maintain the status quo and remand the case to the plan administrator for further administrative proceedings that comply with ERISA. *See Hackett v. Xerox Corporation Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003). The Seventh Circuit recognized:

> In a case where the plan administrator did not afford adequate procedures
> in its initial denial of benefits, the appropriate remedy respecting the status
> quo and correcting for the defective procedures is to provide the claimant
> with the procedures that she sought in the first place.

*Id.* The Seventh Circuit also made clear that "the court is not the place to make a determination of entitlement to benefits." *Id.*

The Seventh Circuit has not yet explicitly addressed the proper remedy for a plan's failure to issue an initial benefits decision under ERISA. Chionis argues that remand is not the proper remedy because this is not a case in which the plan administrator did not afford adequate procedures in its initial denial of benefits but rather Edward Health, as the claims administrator for the STD Plan, failed to act at all. However, in light of the Seventh Circuit's holding in *Hackett*, this court finds that maintenance of the status quo is appropriate and remands this matter for a full and fair review of Chionis' claim for short-term disability benefits.

13

## CONCLUSION

For the forgoing reasons, plaintiff Mark Chionis' motion for summary judgment [18] is denied. Defendants Group Short Term Disability Plan and Group Long Term Disability Plan for Edward Health Services Corporation and UnumProvident Corporation's cross-motion for summary judgment [24] is granted in part. Defendants are granted summary judgment on Count I, and an administrative remand is ordered on Count II for a full and fair review of Chionis' claim for short-term disability benefits.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: July 7, 2006